0.0 Jeffrey M. Healey et al. v. Kathleen Dennehy et cetera et al. Ms. Berry, still good morning. Good morning and may it please the Court, Mary Murray for the Commissioner of Correction, the Superintendent of the Massachusetts Treatment Center, and the Massachusetts Department of Correction. The District Court erred below, first in finding that a plan that had been submitted as evidence in earlier consent decree litigation was a court order entered in that earlier litigation, and then by ordering relief under that plan, that in several respects is inappropriate and exceeds the Court's authority. Well, the District Court, of course, did more than order relief under the plan. I understand your argument about the plan, but on the pharmacopsychological evaluation and treatment, if proven to be necessary, the District Court justified that as a constitutional violation as well as a violation of the plan. Isn't that so? That's correct, and the defendants do not appeal the constitutionally-based relief awarded to these. Therefore, whether or not it's a violation of the plan becomes moot. Now, I understand the District Court granted other relief on the basis of the plan, but I'm trying to narrow this if we can. Similarly, on the community access program, the District Court, in its declaration of rights, although it refused an injunction, in its declaration of rights found that the failure of the treatment center to have a viable community access program was not only a violation of the plan, but also a violation of state law. The Court did, she made that in the decision, but the language about state law was not carried over to the final order. No, no, it wasn't carried over to the injunction. I thought that was part of the declaration, the declaratory. Right. It was not embedded in the final order. There are two issues there. One, as I indicated, we have not appealed to the constitutionally-based relief to these individual plaintiffs. However, the pharmacological issue with respect to the plan is not moot because it's clear that the District Court intended that to have effect beyond these two plaintiffs. It exceeds the Court's authority, most respectfully, in several ways. First of all, the plan was never entered as an order in the earlier litigation. Second of all, even if the Court were to find that the plan were some form of an order, which it is not, then under the established jurisprudence of the Supreme Court in this Court, it could only be deemed to find that the plan is enforceable to require the defendants to meet constitutional standards. There is no free-floating right of the District Court to order the defendants to meet standards that exceed the Constitution, and the plan does meet standards that exceed the Constitution. Now, wait a minute. You're arguing things you don't have to argue on, which go way too far. If the Court had embedded the management plan in the consent decree and had said, I'm retaining jurisdiction here, but the parties have to comply with the continuing provisions of the decree, which included the management plan, we wouldn't have to revisit the constitutional issue every time a claim of breach was made. The problem, the core problem that you've got is that you say the District Court, A, never embedded the amended management plan in the record of the case, in the decree, and that the Court didn't retain jurisdiction to enforce any violations of the plan, and therefore Judge Saris didn't have jurisdiction to do what she did. That's correct. And when we look at the underlying decision in King 4, Justice Mazzoni, Judge Mazzoni's decision in King 4, decided in 1999, he unequivocally terminated the consent decrees and properly understood that the two issues before him were, was there any ongoing constitutional violation, and recognized the co-important principle that injunctions against state institutions should not operate in perpetuity. When we read King in context, he unequivocally terminated the consent decrees. He did not enter in a disengagement order or any other order. In fact, he did not order the defendants in the King cases to do anything at all. And the defendants could not have appealed from that judgment, because as this Court has said, we review orders, decrees, as this Court, in fact, Your Honor wrote in Ray Williams one year before the termination of these consent decrees, we won't review orders and decrees. We do not review explanations of cases. We do not review those kinds of things. Judge Mazzoni unequivocally terminated the consent decrees. The defendants had achieved the goal that they wanted. If the plaintiffs in the consent decree, of which Mr. Healy was one, wanted a plan enforceability order, they should have appealed, and they could have appealed, as was the case of the Joyce case, where a female golfer had been discriminated against. Judge Gorton said, I'm not entering an injunction, because the defendants know they'll be subject to severe sanctions. This case reversed for consideration of injunctive relief, because there was no way, no mechanism in Judge Gorton's decision in Joyce to enter any relief, any sanctions against the defendants, because he had not entered an injunction. The amended management plan, if it were to be considered an order at all, can only be read as requiring defendants to meet constitutional limits. In several respects, it exceeds the Constitution. As this Court noted in Lankton, the consent decrees require least restrictive conditions. That exceeds constitutional requirements. The Community Access Program is not constitutionally mandated. And turning with respect... Let me, because I realize you have very little time, I'm trying to clarify in my own mind, what happens if we agree with your core argument, that the amended management plan is not enforceable as a decree? What I'm concerned with is the Community Access Program, because we have a finding by the District Court that the failure of the Corrections Department to provide that program violates state law. What do we do with that finding? Do we remand to the District Court to fashion alternative relief? No, and the reason is that because a federal court does not have the authority, most respectfully, to order a state defendant to comply with state law. That's an injunction, but you're not suggesting that a federal court doesn't have the authority to make a declaration as to whether or not a program is in compliance with state law? She made the declaration. Well, but you just said that wasn't part of the final order. Shouldn't it be part of the final order? I mean, you know, it seems to me that you ought to be on the same side as the plaintiffs with respect to this. If this treatment center is operating in what Chief Judge Saras has said is violative of state law, unless you have a real defense to that, all right, you should want to implement some remedy to that. You shouldn't be resisting that. So wouldn't you want that kind of declaration on the record so you could go to the legislature and say, we've got to reestablish this program, give us some money? We don't need that declaration to do that. And you haven't done it. And it's only, I realize it's only been 14 years, and in the history of the DOC, that's a pittance. But you haven't done it. Well, there's no evidence on the record that any qualified person was ever turned down for it. And more importantly... But you know, counsel, that kind of argument doesn't help you because it overlooks a finding by the district court that the department has purposely made the application process for this program so convoluted and created such barriers to entry that people don't get turned down because they can't get through the application process. What the court heard was that people also don't apply, which this court recognized in King 3 in 1998 as a continuing problem. Many people do not seek to apply. One of the reasons for that is the barriers to entry. At least that's what Judge Sarah says in her opinion. And focusing on this case, neither of these plaintiffs showed a violation of his rights. Mr. Healy and Mr. Gibbon have separate claims. Mr. Gibbon never made a claim under the amended management plan. Mr. Gibbon never made a claim under the plan. Mr. Gibbon's claim was only constitutional and he failed to prove it. Mr. Healy has made no showing, and neither has Mr. Gibbon for that matter, that he's at any point been suitable for it, for any program that he's been turned down for. Mr. Healy, as the record shows, was briefly in the Community Transition House but was removed for bad behavior, persistent bad behavior, and Judge Sarah's made a specific finding, which is not challenged on appeal by the plaintiffs as far as I read their briefs, that Mr. Healy's failure to be placed in the CTH, the Community Transition House, or the Community Access Program is due to his own persistent bad behavior. In any event, turning to the pharmacological order under the amended management plan, it's both wrong and unfair to all concerned. Nowhere in that plan does the plan mention this known and previously available form of treatment. It was known in the 90s, it was used in the 90s, and discontinued. Mr. Healy was a member of the class of 48 plus 1, which was a group of plaintiffs, intervenor plaintiffs, in the King case. Even though that form of treatment was discontinued in the 90s during the ongoing consent decree litigation, at no point did Judge Mazzoni order that form of treatment and at no point was that form of treatment mentioned in the amended management plan, which gave specific detail about the kinds of treatment that would be ordered. The court found a constitutional violation which the defendants have not appealed, but to say that that provision drifts unseen in the amended management plan is wrong. But this is really an alternative argument to your main argument that the amended management plan isn't at issue here. The amended management plan is not a court order of any kind. Okay, if that's so, then we never get to this argument. Then it doesn't matter what's in the amended management plan. That's correct, and all relief ordered under the amended management plan must be vacated. Except that as respects to these two plaintiffs, what's ordered on, that's what I was trying to get across to you, what's the ethical, psychological evaluation for these two plaintiffs? We're not dealing with class actions here. What's ordered for them is required as a matter of constitutional law, which you are not objecting to. That's right, in fact the evaluations have been done and proceeding accordingly. So that is not appealed, there was no motion to stay it. It's not an issue here. It's not an issue. Judge Mazzoni did not enter the consent decrees, excuse me, the amended management plan as a modified consent decree, which he certainly knew how to do having modified the consent decrees earlier in the litigation in King. He didn't enter it as a declaration. He didn't enter it as a consent decree, which of course he could not have done because there was neither consent nor an order. And he could not have ordered the parties, the defendants, to a standard higher than the Constitution absent their consent. In short, the plan is not an order of any kind. It's mildly troubling, and I'm not sure there's a legal remedy for it, but when you terminate an institutional consent decree, you normally seek assurances that the institution's learned its lesson and is going to proceed in good faith accordingly into the future. And that's one of the things you want to be assured of before you terminate one of those decrees. And this plan struck me as sort of your effort to assure Judge Mazzoni that things were going to be different and conducted in accordance with this plan that you proposed. Well, the plan was designed, the original plan and then the amended management plan, which is at issue here, were designed to inform Judge Mazzoni and this court, because the case came up three times to this court, how the Department of Correction would take over as the sole entity, the sole government agency, in charge of the treatment center. Prior to that, the statutory structure had required the Department of Mental Health to have so-called patient control with the Department of Correction providing custodial personnel. In 1993, the Massachusetts legislature changed that, but because that statutory structure had been embedded in the consent decrees, a motion to modify the consent decrees came to the district court and made its way in three versions up to this court, King I, King II, and King III. And the legislature transferred sole control because it made a determination, as this court pointed out in King III, that the Department of Correction was the agency best able to do so and able to manage this dangerous population. The second issue was Judge Mazzoni then invited DOC to submit a plan, which it did in 1994, to evaluate how DOC would exercise these new statutory obligations. The case came here, it was remanded back, and Judge Mazzoni asked for further modifications and asked for further things. He also invited settlement, which was unavailing, and all the efforts to settle were unavailing. Then Judge Mazzoni monitored after the submission of the plan for about 15 months and required submission of monthly reports. So he had assurances, he heard testimony, he visited the treatment center, all of which is documented in his final opinion and earlier orders, and heard from both the residents and their attorneys, and heard from people who were employed at the facility, and expert testimony about the programming available. So he did exercise that oversight, and as this court said in King III, the community access program had shrunk. It had shrunk from some 88 participants or 58 participants in 1988 down to two participants in 1997, and people refused to apply. In any event, all of these issues, as Judge Mazzoni did, consider and exercise considerable oversight of the facility. Then in March of 1999, he held an evidentiary hearing and terminated the consent decrees unequivocally in June of 1999. And he could have used a disengagement order, for example, as was done in the Ricci case. There were numerous ways he could have retained jurisdiction, but he didn't. He unequivocally closed them. If the plaintiffs had sought some form of order, they should have appealed. They were represented by some of the finest attorneys and finest lawsuits in the Commonwealth of Massachusetts. They had ample assets at their disposal. In any event, turning to the plaintiff's claims, the plaintiffs here have failed to show that the district judge abused her discretion in denying injunctive relief in all other respects. And of course, the pharmacological treatment, as we discussed, is not at issue. It's not appealed. The plaintiffs have not showed that the trial judge, Judge Zares, did not consider all of their issues. She considered the information both individually and as she said at page 136 of the appendix in her order, she considered all of the conditions collectively and found that they had not proved any other constitutional violation. She found that they hadn't proved that the Community Access Program, even if it's not operating as it's expected and hoped for, that that was not a constitutional violation. And in fact, the numbers on release, as the court found them, and they're in the record and the last two years of the consent decree litigation, 18 people were found not sexually dangerous. In the two years leading up to the 2011 trial, before Judge Gertner in this case, 47 people have been found not sexually dangerous. So it is not a barrier to discharge. And Judge, Chief Judge Zares was mistaken in this respect. Her view was that if more people were on community access, more people could be taking pharmacological treatment and be supervised after release in the community. But state law does not permit release on community access. You have to, by state law, Section 6A of Chapter 123A, continue to reside within the secure confines of MCI Bridgewater. So the Community Access Program is not an alternative form of release. It's a supervised program where you can go out into the community for day trips, but you must reside in the facility. So Judge Zares' viewpoint that this would help people be released ordering drug treatment under the amended management plan and that it would be a mechanism to supervise them in the community is mistaken. And that's an error of law. In all other respects, the plaintiffs simply failed to prove their case. They offered no evidence, no expert evidence that a community access program is required. They offered no evidence that the treatment program which they largely assail fails to meet professional standards. And in fact, Judge Zares found that it is in accordance with best professional standards, best professional judgment, and at the cutting edge of sex offender treatment in the field. And unless the panel has any other questions, the defendants will rest on their brief. Thank you. Good afternoon, Your Honors. My name is John Houlihan. I represent Jeffrey Healy, who is a civilly committed resident at the Massachusetts Treatment Center in Bridgewater. I will be arguing for 12 minutes this afternoon and addressing issues relating to the amended management plan as an enforceable court order or the equivalent of a court order and the district court's error in not awarding additional injunctive relief to address the DOC's departures from the material terms of the management plan. My colleague, Mr. Miles, will be arguing for eight minutes and will address the constitutional arguments advanced by both Mr. Healy and Mr. Given. Your Honors, the plan is enforceable as the equivalent of a court order. That's what Magistrate Judge Dean found, and her decision was adopted by both Judge Gertner and by Judge Zares. But Judge Zares didn't address the merits of it at all. She merely accepted it as law of the case. That's true, Your Honor. So it's not like she put her imprimatur on it. So I suggest you tell us why that decision is correct. It's true that the amended management plan was not in any way, shape, or form incorporated in any order that Judge Mazzoni issued, at least no order that I've seen. I'm not sure that I agree with that, Your Honor. If you look at the official docket of the court, the decision, which is at, I think it's at item 295, entered on July 21, 1999, refers to the decision that Judge Mazzoni entered as a memorandum and order. And that then there's a separate order issued after that, isn't there? There's a case closed. Yeah. The title memorandum and order appears, but is that what you're relying on? You're relying on that memorandum as evidencing that the AMP is an enforceable court order? And that that's clearly what Judge Mazzoni intended, Your Honor. He said in his decision and order that he recognized that there is an ongoing tension between the treatment issues and the issues of security. And he said in the event that the DOC fails in its obligation to adhere to the plan, which he said they were obligated to adhere to the plan, or to enforce the terms of the plan. We did just what Judge Mazzoni said you should do if you believe, as we do and as we proved, that the DOC had not only strayed from the requirements of the plan, but had, in many material respects, just abandoned the plan altogether. I had a hard time understanding your argument. Is it he terminated the consent decree, right? Correct. We all agree with that. Correct, Your Honor. Okay, and so what is this plan? What is that, a freestanding order? Judge Mazzoni said in his decision and order that the plan replaced the consent decree. But it can't, right? It can't. There's no consent and there's no finding liability. There's no... It can't replace the consent decree, correct? We don't just do that. I mean, I wish I could, but I don't think we have that power, do we? Cases and controversies. We have to litigate cases and controversies. And we have to find liability and a legal basis for relief. What is it here? What's the legal basis for relief of that plan? Assuming it's an order, what supports it? I'm sorry, I'm not... Assuming it's an order, what supports the order? Is there a finding of liability? Is there consent by the other party? Is there a case underlying it? What is it? It replaces the consent decree, Your Honor. It's important to remember the context in which this... Can I just tell you? I'm a district judge and I say to myself, I'm going to terminate this consent decree and I'm going to replace it with this order. The other side hasn't agreed with that order, but I'm going to do it anyway. And I can because I find what? What do I find? He maintained the... He refused to vacate judgment zone. He didn't vacate the consent decree because he wanted to maintain the findings on which the consent decree was based. That the Commonwealth had not been operating the treatment center in accordance with constitutional requirements. That's true. That was true at one time. But presumably that had been brought up to constitutional par or else he would not have terminated the consent decree. So you see, I have the same problem Judge McAuliffe has. There's a case here, all right? I mean, there are actually several cases consolidated, but for all intents and purposes, there's one case, all right? And the district court says a lot of things about the management plan, but in the end what the district court does is terminate the consent decree. Does not retain jurisdiction. Closes the case. So there's nothing pending at that point. And the assistant attorney general has said to us, I couldn't appeal at that point any order that the amended management plan was binding on the treatment center because there was no such order. I had gotten the relief that I wanted, which is I'd gotten the consent decree terminated. So I can't now be held to the amended management plan. That argument resonates with me, at least at first blush. With all due respect, Your Honor, to Ms. Murray, I disagree. The Commonwealth could easily have gone in to Judge Mazzoni's courtroom and said, Your Honor, how is it that this management plan is the operating document for the treatment center? How is it that residents have the right to sue to enforce its terms, which Judge Mazzoni clearly said in his decision is end order. And they could certainly have gone in and asked for clarification. And I think, frankly, they could have appealed from that decision and said, You can't appeal from decisions. You can only appeal from judgments and orders. Just because the judge says something, you can't appeal that. But he entered it as an order, Your Honor. He did enter the amended management plan as an order. If he'd done that, we wouldn't be here. That's true, Your Honor. He did refer to the management plan is embedded in his order. Which order? The order terminating the consent decree? That order? Yes, the decision and order. So your argument is he at once terminated the state's obligation to comply with the consent decree, but created an order that they didn't consent to that they had to comply with. No finding of liability. But the Commonwealth did consent to the management plan. They submitted the management plan. But they didn't consent to being bound by it in perpetuity. They submitted the management plan and brought everything up to snuff. A management plan, which as I understand it, acknowledged that it was going to be changed from time to time because there were evolving conditions, et cetera. Certainly, Your Honor. They represented, the Commonwealth represented, that it would operate the treatment center in conformance with the management plan, a representation that it has not fulfilled. And certainly we have never denied that the management plan has some flexibility built into it. A case in point is pharmacological treatment. In the 1990s, pharmacological medical treatment might not have been the sort of standard of care, but there was uncontested testimony from Dr. Saleh that it would be malpractice not to operate a treatment regimen that incorporated pharmacological treatment today. And that's an example of how the medical treatment of these diseases has evolved over the intervening 15 years. There are other examples. I don't think Judge Mazzoni anticipated in 1999 that the treatment center would have to deal with a transgender population. And as this Court knows, it does have to deal with that now. So yes, there is a certain amount of flexibility built into the plan. But there are also some fundamental principles that are also put into the plan. The obligation to provide the best possible medical treatment. The obligation to treat the residents in a facility that is operated in the least restrictive conditions, consistent with the purposes of confinement. So go back to Judge McAuliffe's question. What findings is that order based on? It's based on the same findings that the consent decree was based on. No, that's not so for two reasons. First of all, the consent decree was entered into at a different point in time where there were apparently constitutional violations. And secondly, the consent decree was entered by consent. So there were no need for express liability findings because the parties had consented to the entry of the decree. And the plan was put into place because the Commonwealth came into court and said, please first modify and then either terminate or vacate the consent decrees because we will operate, we intend to operate, we will operate the treatment facility in accordance with the plan. And the judge says, all right, I accept that in good faith. And the judge now has a choice. The judge can either say, I'll grant your request to terminate the consent decree, or the judge can say, I'll grant your request to terminate the consent decree, but I'm going to retain jurisdiction and we're going to put the amended management plan on record. And if there's a violation, come back to me. In effect, Ron, that's exactly what Judge Mazzoni said. The Supreme Court has said you can't retain jurisdiction by implication. There's nothing in what Judge Mazzoni said that indicates a retention of jurisdiction. He said that if the DOC fails to adhere to its obligations under the plan or under the statute, that residents will come back to court and sue to enforce the plan, and the plan will take. He didn't say come back to federal court. You see, because, I mean, he couldn't have. Because the federal court has no jurisdiction to conform a state agency's actions to state law. So that reference to state law, I think, with an experienced judge, must be a reference to state court. I suppose, Your Honor, I suppose that there could have been an action brought in state court. There were federal constitutional issues that overlapped that give independent ground for jurisdiction. Your Honor, in closing, I'll just say two quick points. One, Judge Mazzoni clearly said that the plan would replace the consent decrees as the basis for future litigation. He said that in his memorandum and order. We did exactly what Judge Mazzoni instructed us to do if we had a problem with the operation of the facility. And finally, Your Honor, to the extent that the court rejects the argument that the plan is enforceable as a court order, or the equivalent of a court order, and I respectfully suggest that that's exactly what it is, but to the extent that the court rejects that argument, then I would urge the court, for the reasons advanced in our briefs, to hold that the DOC is judicially estopped from treating the management plan as anything other than a court order. Because it was based on the representations of the DOC that it would operate the facility in conformance with the management plan that Judge Mazzoni lifted the consent decree in the first instance. This is a classic example of when the principles of judicial estoppel should be applied to prevent a party from gaming the system and switching its position as it becomes convenient to do so. Thank you, Your Honor. Thank you. Mr. Miles, good morning. Good afternoon, Your Honor. My name is Harry Miles. I'm privileged to represent Mr. Given in this matter before you. With the permission of the court, I'd like to focus the discussion here on one proposition, that is that discretion unexercised is due process denied. And I'm going to suggest that the treatment center, according to Judge Saris' factual findings, has failed to exercise its discretion in a number of ways. I'm going to try to refer to two of those as examples. One is the failure to maintain a CAP or community access program, with respect to Mr. Given in particular. And secondly, and as important, is the utter failure of the treatment center to maintain or to attempt to find the statistics that would allow it to develop a metric to determine whether its treatment program has any effect whatsoever. But, excuse me, before you say discretion unexercised, doesn't that discretion have to relate to something that's of constitutional dimension? Yes, Your Honor. So that your first hurdle on the CAP is Chief Judge Saris' conclusion that the CAP is not constitutionally required. In answer to that question, Your Honor, I would ask the court to specifically refer to pages 56, 65, and 70 of Judge Saris' decision. I'm sorry, did I go too fast? 56, 65, and I promise that was not a dyslexic mistake, and 70 of Judge Saris' decision. Essentially on page 56, the judge says that not one single person has completed the treatment program successfully. That's a stunning indictment. Then she says that the DOC admitted that the community access program is a critical part of the treatment regimen and that the absence of the community access program is unrelated to any consideration of care, custody, treatment, or rehabilitation. So those factual findings are part of Judge Saris' memorandum of decision, and we have no contest with them. But it still doesn't elevate the CAP to something of constitutional dimension. I mean, you know, the DLC could decide not to sell in a commissary if they have one, not to sell chewing gum, and they might have no valid reason for it and it would be completely unrelated to any valid purpose of care and treatment, right? But it still wouldn't be unconstitutional to refuse to do that. I mean, there's got to be, you can't jump over the need for a constitutional hook. Your Honor, the constitutional hook is simply one of due process. We always have to ask ourselves, in a due process case, what processes do? I would submit that the state legislature has discretion to construct the treatment programs if the size are appropriate. The state legislature did that, and it mandated under Chapter 123A, Section 6A, the existence of a community access program. Now, I'm going to concede that the state legislature could have acted in some other way. The state legislature did that, and in an appropriate action, the DLC can be made to adhere to that. It can't be done in a federal court because of the Pennhurst Doctrine. Unless there's a constitutional violation. That's exactly where I'm going, Your Honor. So the state legislature has defined for us what due process is in this particular context. I would submit that had the state legislature chosen some other transitional model, that might be appropriate, and I'm not arguing constitutionality on its face. I'm arguing it as applied. We then have the DLC bound to offer due process to Mr. Given by exercising its discretion appropriately as mandated by the state. Excuse me. So once the state creates or orders the implementation of a condition that would be favorable to an inmate or a civilly committed person, you get around the Pennhurst Doctrine by saying the failure to adhere to that structure of state law becomes a violation of due process? No, Your Honor. I mean, that would extend the Constitution way beyond where we've ever set it. I would love to see it, Your Honor. I don't think I'll live that long. But in any event, I would submit that there's one element missing from that formulation, and the missing element is that once the process is determined, the state agency which is delegated with the responsibility of implementing the statutory mandate must at least exercise some discretion in that implementation. If the state agency fails to exercise the discretion, then the state agency is denying constitutional due process to the individual. If, for example, we move the analysis to the analogous but different area of treatment of the mentally ill, and we look at the commitment of mentally ill individuals who are going to be treated for the purpose of treatment to prevent them from harming themselves or others, I think maybe the picture becomes a little bit clearer. Because there, under Youngberg, if the state fails to offer a reasonable treatment program informed by the exercise of professional judgment, then a federal due process violation exists. Well, that's true. But Youngberg isn't hinged to a state law obligation. Youngberg found that that right was of constitutional dimension. I don't have any problem with that. Then let me move the analogy back to the treatment center and submit that the treatment center, by failing to implement a critically important component of the state program, not through its exercise of discretion, but because of its failure to exercise its discretion and its utter ignoring of the critical components of the treatment program, has now violated constitutional due process. Analogy, again, going back to the mentally ill. Let's suppose we have a mentally ill person committed because that person has suicidal ideation, and the mentally ill person is confined to a room. No treatment is offered. I think we all agree under Youngberg that would be a constitutionally defective procedure. Not because state law mandated that some treatment be offered. That would be a constitutional violation, no question about it. That's correct. But what I'm struggling with is your attempt to give some talismanic significance to the state law creation of a duty. I mean, maybe our difference is, in your use of the term, critically important, because Judge Saris looked at this and said, it's not important enough that I consider this to be a violation of the Constitution. And maybe that's where we're differing, that you're saying that a whole range of these things should be judged to be critically important, just because the legislature said so. May I respond to that comment? Sure. Thank you, Your Honor. I think the situation is that we suggest that Judge Saris' formulations and conclusions, which are found on page 66 and 111 of the decision are erroneous, given her subsidiary findings, that the final conclusion that the Community Access Program is not important enough to warrant constitutional protection is just wrong in light of what she found in her decision and articulated about the program. Thank you very much for hearing me. I appreciate it.